IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN D. THORNTON, et al.,           §
                                    §
                Plaintiffs,         §
                                    §  Civil Action No. 3:12-CV-0880-D
VS.                                 §
                                    §
GMAC MORTGAGE, LLC,                 §
                                    §
                Defendant.          §

MEMORANDUM OPINION
AND ORDER

Defendant GMAC Mortgage, LLC ("GMAC") moves for summary judgment

dismissing plaintiffs' action arising from the attempted foreclosure of their residential

property. For the reasons that follow, the court grants the motion and dismisses this case

with prejudice by judgment filed today.

I

The material facts in this case are uncontested. Plaintiffs John D. and Robyn

Thornton (the "Thorntons") obtained a home equity loan on their residence located in Grand

Prairie, Texas (the "Property").[1] To do this, they executed an $81,600 promissory note and

a deed of trust in favor of GMAC's predecessor-in-interest. A few years later, when GMAC

attempted to foreclose on the Property, the Thorntons sued GMAC in state court, and GMAC

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, L.L.C.*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

removed the case to this court. The Thorntons assert the following two underlying violations

of the Texas Constitution's provisions regarding home equity loans: (1) the principal balance

of the loan was greater than 80% of the Property's fair market value, *see* Tex. Const. Ann.

art. XVI*,* § 50(a)(6)(B), and (2) the fees for the loan exceeded 3% of the loan amount, *see*

§ 50(a)(6)(E). Based on these alleged violations, the Thorntons assert that the loan is null

and void pursuant to § 50(c), and that GMAC forfeited all principal and interest of the home

equity loan because it failed to correct these violations within 60 days of notification,

pursuant to § 50(a)(6)(Q)(x). The Thorntons seek a declaratory judgment in accordance with

§ 50(a)(6)(Q)(x) and § 50(c), damages, and attorney's fees. GMAC moves for summary

judgment,[2] contending that the loan did not violate the Texas Constitution, and that, if it did,

the Thorntons' claims are time-barred.

## II

Because the Thorntons will bear the burden of proof on their claims at trial, GMAC

---

[2]GMAC states that it is moving for "Summary Judgment on the Pleadings seeking dismissal of Plaintiffs' claims." D. Mot. 2. Fed. R. Civ. P. 12(d) provides that if, in a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." "A motion for judgment on the pleadings can be converted into a motion for summary judgment if it relies on anything outside the pleadings and incorporated materials, even if the new material is submitted by the nonmoving party in response to the motion." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2010 WL 2563429, at \*8 (N.D. Tex. Jun. 22, 2010) (Fitzwater, C.J.) (citing *Flores v. Sullivan*, 945 F.2d 109, 110 n.3 (5th Cir. 1991)), *aff'd*, 420 Fed. Appx. 364 (5th Cir. 2011). Here, both sides have attached documents outside of the pleadings. And in setting forth the standards for deciding the motion, both sides cite Rule 56 standards. The court therefore concludes that this motion is properly characterized as a motion for summary judgment.

can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the Thorntons' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once GMAC does so, the Thorntons must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the Thorntons' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Thorntons' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if they fail to meet this burden. *See Little*, 37 F.3d at 1076.

## III

The court first addresses whether the loan violated Tex. Const. Ann. art. XVI, § 50(a)(6)(B) by exceeding 80% of the fair market value of the home.

## A

Section 50(a)(6)(B) states that

> the homestead of a family . . . shall be, and is hereby protected from forced sale, for the payment of all debts except for . . . an extension of credit that . . . is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made[.]

GMAC has adduced evidence that the fair market value of the home was $102,000 and that the loan was in the amount of $81,600—i.e., exactly 80% of the market value. Its evidence includes an appraisal and an acknowledgment of fair market value that GMAC argues conclusively establishes that $102,000 is the fair market value of the homestead under § 50(h). That section states:

> A lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:
> (1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and
> (2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.

*Id.* at § 50(h).

The Thorntons respond that § 50(h) is inapplicable for multiple reasons. First, they argue that the written acknowledgment as to the Property's fair market is invalid for the purposes of § 50(h) because they did not in fact acknowledge that the Property was worth $102,000, but acknowledged only that it had been appraised for that value. They also argue that the acknowledgment fails to satisfy § 50(h)(2) because GMAC knew that the Dallas County Appraisal District appraised the Property for tax purposes at $80,160 and therefore had actual knowledge that the $102,000 value stated in the acknowledgment was incorrect. The Thorntons maintain that, considering GMAC's inability to conclusively establish the fair

market value under § 50(h), the tax appraisal records and John D. Thornton's affidavit create a fact issue regarding the market value of the home, and consequently, whether the $81,600 loan exceeded 80% of the Property's market value.

B

The court holds that there is no issue of material fact regarding the Property's market value at the relevant date ($102,000), and therefore no reasonable jury could find that the loan exceeded 80% of the Property's fair market value.

The Thorntons' argument that § 50(h) does not apply because they did not acknowledge that the fair market value of the Property was $102,000 is misplaced. The document in question is titled "Acknowledgment of Fair Market Value of Homestead Property," and states that "[o]n the date of the closing, the fair market value of the Property is 102,000.00." D. App. 8. Under this statement are two boxes that can be checked to establish how the fair market value was determined. The accompanying text to the first box states that "[t]he fair market value stated above is the value placed on the Property in an appraisal conducted by SCOTT CRAFT," where the name "SCOTT CRAFT" appears to have been added independently and is not part of the form's standard language. *Id.* The accompanying text to the second box states that, "[w]ithout benefit of a formal evaluation, [the parties] agree that the above stated value is the fair market value of the Property." *Id.* Only the first box is checked. The Thorntons argue that, by not checking the second box, which states that the parties agree that the fair market value is correct, the acknowledgment is at least ambiguous as to agreement. The court disagrees.

Under Texas law, "[a] contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation." *Hoffman v. L&M Arts*, 774 F.Supp.2d 826, 833 (N.D. Tex. 2011) (Fitzwater, C.J.). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). There is nothing ambiguous about the challenge contents of this document. The operative language that accompanies the second box is "[w]ithout benefit of a formal evaluation." This means that this box should only be checked only when the agreement *establishes* the fair market value because there is no appraisal. In this case, the appraisal established the fair market value, and the Thorntons acknowledged that "the fair market value of the Property is [$]102,000.00." D. App. 8.[3]

Additionally, evidence that GMAC knew the Property's tax appraisal value at the time of closing was $80,160 does not create a genuine issue of material fact regarding whether GMAC had actual knowledge that the written acknowledgment was incorrect. The Fifth Circuit has stated that "under Texas law, tax valuations are legally insufficient evidence of fair-market value." *United States v. Curtis*, 635 F.3d 704, 718 (5th Cir. 2011) (citing *Dall. Cnty. Bail Bond Bd. v. Black*, 833 S.W.2d 247, 249 (Tex. App. 1992, no writ)).[4] Given that

---

[3]The Thorntons also contend that they did not read or understand the acknowledgment. An individual who signs a contract, however, is presumed to know its contents, *In re Lyon Financial Services, Inc.*, 257 S.W.3d 228, 232 (Tex. 2008), and the Thorntons have not introduced any evidence that would enable a reasonable trier of fact to find that they have rebutted this presumption.

[4]The Thorntons argue that, despite contrary case-law, tax appraisals should be considered proper evidence to establish market value. They argue that the contrary case law

the tax appraisal cannot create a genuine issue of material fact regarding the market value of

the Property, the court concludes that the tax appraisal cannot be used to show that GMAC

had actual knowledge at the closing that the fair market value in the written acknowledgment

was incorrect. If the tax appraisal is not competent evidence of market value, the appraisal

cannot put someone on notice that a different assessment of market value is incorrect.

Accordingly, GMAC has shown that it meets the strictures of § 50(h) and therefore that it

"may conclusively rely on the written acknowledgment as to the fair market value of the

homestead property": $102,000. *See* Tex. Const. Ann. art. XVI, § 50(h).

The Thorntons contend that, regardless whether GMAC satisfies § 50(h), it cannot

rely on that provision because this is an affirmative defense that GMAC waived by not

asserting the defense in its answer. The Thorntons do not cite any case-law, however, that

supports this assertion, and the case-law at least implicitly rejects it. *See, e.g., Poswalk v.*

*GMAC Mortg., LLC*, 2012 WL 2193982, at *2 (N.D. Tex. Jun. 15, 2012) (Fitzwater, C.J.),

*appeal docketed*, No. 12-10752 (5th Cir. July 17, 2012). Moreover, this argument conflicts

---

developed before 1979, when the tax appraisal value was not the same as the market value.
*See Hous. Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686-87 (Tex. App. 1977, writ
ref'd n.r.e.) ("[I]t is generally held that the value placed upon real property for the purposes
of taxation by assessment without participation of the landowner is not evidence of its value
for purposes other than taxation . . . . Exclusion of such testimony is also considered a rule
of practicality, since tax assessments rarely reflect the true market value."). Since 1979, all
taxable property is appraised at its market value. Tex. Tax Code Ann § 23.01 (West 2008).
Thus, according to plaintiffs, because the rationale underpinning this exclusion no longer
exists, the post-1979 decisions repeating this rule are in error. This court is bound, however,
by the law of the Fifth Circuit, which is contrary to the Thorntons' position. And the Fifth
Circuit's decision in *Curtis* cites a 1992 decision of a Texas court of appeals. *See Curtis*, 635
F.3d at 718 (citing *Black*, 833 S.W.2d at 249).

with the Texas conception of an affirmative defense. "An affirmative defense 'seeks to establish an independent reason that the plaintiff should not recover' and is 'thus [a defense] of avoidance, rather than a defense in denial'; that is, it is a defense of confession and avoidance." *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 268 (Tex. App. 2005, pet. denied) (quoting *In re C.M.*, 996 S.W.2d 269, 270 (Tex. App. 1999, no pet.); and *Great Am. Prods. v. Permabond Int'l*, 94 S.W.3d 675, 683 (Tex. App. 2002, pet. denied)). By relying on § 50(h) to conclusively establish the market value of property, a defendant is not seeking to establish an independent reason why the plaintiff should not recover and is not asserting a defense of *avoidance*; instead, the defendant is *denying* the plaintiff's claim by discrediting a plaintiff's contrary assertion of market value.

Nevertheless, were this an affirmative defense, the court would allow it in this case because, "although state law defines the nature of defenses, . . . the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986) (internal quotation marks omitted). GMAC has raised the defense in such a way, and at such a time, that the Thorntons are not prejudiced. *See Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856 (5th Cir. 1983) (stating that defendant did not waive affirmative defense if "[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond").

IV

The court next addresses whether the loan violated Tex. Const. Ann. art. XVI, § 50(a)(6)(E) by charging closing costs that exceeded 3% of the loan amount.

GMAC has produced the HUD Settlement Statement indicating that the Thorntons were charged a total of $2,148.00 in settlement charges and fees, which amounts to 2.63% of the principal amount of the loan. The Thorntons do not dispute the validity of this document or otherwise argue that they paid more in fees than $2,148.00. Therefore, the court concludes that there is no material issue of fact and that GMAC is entitled to summary judgment on this issue.

V

Because the court concludes as a matter of law that GMAC did not violate § 50(a)(6), and that the Thorntons' claims under §§ 50(a)(6)(Q)(x) and 50(c) are premised on these purported violations, the court grants GMAC summary judgment on these claims.[5]

\* \* \*

For the reasons explained, the court grants GMAC's November 20, 2012 motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED.**

March 1, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

_____

[5]Because the court concludes that GMAC is entitled to summary judgment on the merits of each of the Thorntons' claims, the court need not address whether their claims are time-barred.